IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| KIMBERLY S. MAACK,<br><br>        Plaintiff,<br><br>vs.<br><br>COMMISSIONER OF SOCIAL<br>SECURITY,<br><br>        Defendant. | CASE NO. 5:25-cv-2705<br><br>DISTRICT JUDGE<br>BENITA Y. PEARSON<br><br>MAGISTRATE JUDGE<br>JAMES E. GRIMES JR.<br><br><br>**REPORT &<br>RECOMMENDATION** |

Plaintiff Kimberly S. Maack filed a Complaint against the Commissioner of Social Security seeking judicial review of the Commissioner's decision denying disability insurance benefits and supplemental security income. This Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c). The Court referred this matter to a Magistrate Judge under Local Rule 72.2(b)(1) for the preparation of a Report and Recommendation. For the reasons stated below, I recommend that the District Court reverse the Commissioner's decision and remand this case for the Agency to resolve the issues raised by the vocational expert regarding the training period.

**Procedural history**

In early 2023, Maack filed applications for disability insurance benefits and supplemental security income alleging a disability onset date of May 15,

2022,[1] and claiming she was disabled due to schizoaffective disorder, bipolar, borderline personality disorder, depression, anxiety, delusions, hallucinations, narcolepsy, shoulder injury, and post-traumatic stress disorder. Tr. 17, 272. The Social Security Administration denied Maack's applications and her motion for reconsideration. Tr. 66, 91–92, 108. Maack then requested a hearing before an Administrative Law Judge (ALJ). Tr. 142.

In October 2024, an ALJ held a hearing. Maack and a vocational expert testified. Tr. 37–65. The next month, the ALJ issued a written decision finding that Maack was not disabled. Tr. 17–30. The ALJ's decision became final on October 21, 2025, when the Social Security Appeals Council declined further review. Tr. 1–3; *see* 20 C.F.R. § 404.981.

Maack filed this action on December 12, 2025. Doc. 1. She asserts the following assignment of error:

> Did the ALJ Err at Step Five (5) By Finding Other Occupations In The National Economy Were Available Under The Final RFC?

Doc. 8, at 1. Maack asks the Court to reverse the Commissioner's decision and order the Commissioner to award Maack disability benefits. *Id.* at 9.

In his brief, the Commissioner agrees that the Court should reverse and remand this case to the agency. Doc. 9, at 2. But the Commissioner argues that a direct award of benefits is inappropriate. *Id.* at 2–3. Instead, the

---

[1] "Once a finding of disability is made, the [agency] must determine the onset date of the disability." *McClanahan v. Comm'r of Soc. Sec.*, 193 F. App'x 422, 425 (6th Cir. 2006).

2

Commissioner says, the Court should remand the case with instructions to the

Agency to consider "unresolved vocational issues." *Id.* at 7. In reply, Maack

contends that "[t]here is nothing left to seek or discover" and maintains that

the proper remedy is an award of benefits. Doc. 10.

**The ALJ's decision**

The ALJ made the following findings of fact and conclusions of law:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2027.
>
> 2. The claimant has not engaged in substantial gainful activity since May 15, 2022, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
>
> 3. The claimant has the following severe impairments: schizophrenic spectrum disorder, somatic symptom disorder, lumbar degenerative disc disease, obesity, obstructive sleep apnea, posttraumatic stress disorder, narcolepsy, and left shoulder rotator cuff, partial tear.
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> 5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity[2] to perform light work as defined in 20 CFR

---

[2]     A residual functional capacity (RFC) is an "assessment of" a claimant's ability to work, taking his or her "limitations … into account." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Circ. 2002). Essentially, it is the Social Security Administration's "description of what the claimant 'can and cannot do.'" *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 631 (6th Cir. 2004) (quoting Howard, 276 F.3d at 239).

404.1567(b) and 416.967(b) except occasional reaching overhead with the left upper extremity. Frequent reaching in other directions with the left upper extremity. The claimant can occasionally climb ramps and stairs, never climb ladders, ropes, or scaffolds, frequently balance, stoop, kneel, crouch and occasionally crawl. The claimant can never work at unprotected heights, never moving mechanical parts, or operating a motor vehicle. Frequent exposure to dust, odors, fumes and pulmonary irritants. Simple instructions and work-related decisions, no production rate pace, occasional interaction with others, occasional changes in a routine work setting.

6.   The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.  The claimant was … 45 years old, which is defined as a younger individual age 18–49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8.  The claimant has at least a high school education (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

11. The claimant has not been under a disability, as defined in the Social Security Act, from May 15, 2022, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

Tr. 19–29.

**Legal Standard**

When a court determines that the ALJ's decision is not supported by substantial evidence, it has two options. The usual course is to reverse the ALJ's decision and remand the case to the Commissioner to re-evaluate the plaintiff's application for benefits. The rarer course is to reverse the Commissioner's decision and award disability benefits. This latter course is warranted "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher v. Sec'y of Health & Hum. Servs.*, 17 F.3d 171, 176 (6th Cir. 1994); *see also* 42 U.S.C. § 405(g). An award of benefits "is proper only where the proof of disability is overwhelming or where the proof of disability is strong and evidence to the contrary is lacking." *Earley v. Comm'r of Soc. Sec.*, 893 F.3d 929, 934–35 (6th Cir. 2018) (quoting *Faucher*, 17 F.3d at 176); *see McClain v. Comm'r of Soc. Sec.*, 114 F. App'x 724, 727 (6th Cir. 2004) (remanding for further findings by the Commissioner "[i]n view of the fact-bound and record-bound nature of the parties' dispute …. The deferential standard of review applicable to these cases generally counsels in favor of hearing from the ALJ first.").

5

**Analysis**

The parties dispute whether all essential factual issues in this case have been resolved. *See Faucher*, 17 F.3d at 176. This question turns on the vocational expert's testimony at the administrative hearing regarding a training or probationary period. Doc. 8, at 5; Doc. 9, at 3.

At the administrative hearing, the ALJ asked the vocational expert to consider whether a hypothetical individual could perform Maack's past work or any other work if the individual had the limitations that the ALJ set out in the RFC. Tr. 62. The RFC included a limitation that the individual could have "occasional interaction with others." Tr. 62. The vocational expert answered that such an individual could not perform Maack's past work, but could perform the following unskilled jobs in the national economy: mail clerk, price marker, and office helper. Tr. 62–63. The vocational expert said that these were "SVP 2 jobs."[3] Tr. 62–63.

Next, Maack's counsel questioned the vocational expert. The following conversation ensued:

> Q [Maack's attorney]: And then to ask you regarding these all, and not just the ones you listed but all

---

[3]     SVP (specific vocational preparation) references the amount of time it takes a typical claimant to learn how to perform the job. *See* POMS DI 25001.001A.78 (available at https://secure.ssa.gov/poms.nsf/lnx/0425001001). The three jobs that the vocational expert identified were "SVP2" jobs, Tr. 62–63, which includes "[a]nything beyond short demonstration up to and including 1 month," *see* DI 25001.001A.78.

> SVP: 1[4] and 2 unskilled work, what is the period for when a person is hired for training and probation, what is the timeframe what you see for that?
>
> A [vocational expert]: Usually two weeks to 30 days.
>
> Q: Okay. So in that two weeks to 30 days, they would have to learn that job, they'll have to learn it from coworkers, supervisors. It may exceed over occasional but at some point there's going to be a standard where they have to know the job and do it independently and then at that point they'll be less than occasional moving forward. Is that an accurate statement?
>
> A: Yes, I believe so. And that's from my experience.

Tr. 63–64.

Maack argues that there are no unresolved facts because, she claims, the vocational expert testified that "training lasts one month for … unskilled work," during which time she would "have more than occasional contact" with others. Doc. 8, at 5–6. And "more than occasional contact" exceeds the RFC, which limited Maack to only "occasional interaction with others," *Id.*; Tr. 21.

As an initial matter, the vocational expert did not say that training for the identified jobs lasts for one month. Rather, the vocational expert said that "training and probation" for unskilled jobs "[u]sually" lasts "two weeks to 30 days." Tr. 64. And the vocational expert agreed with Maack's attorney that, during this "two weeks to 30 days" when an individual "would have to learn that job," the amount of contact with others "*may* exceed over occasional." Tr.

---

[4]      SVP 1 jobs involve "a short demonstration only." *See* POMS DI 25001.001A.78.

7

64 (emphasis added). This is not, as Maack submits, an unequivocal statement by the vocational expert that all unskilled work, including the three jobs he identified, requires more than occasional contact with others during a 30-day training period. Doc. 8, at 5–6.

The vocational expert's testimony leaves unresolved the following factual issues: (1) the possibility that some unskilled jobs may *not* involve more than occasional contact during the training period,[5] including the three jobs that the vocational expert identified; (2) if contact for those three jobs would require more than occasional interaction with others, how long the training period for each would last; (3) if there would be more than occasional contact with others during the to-be-determined training period, whether the claimant could nevertheless complete the training period to perform these jobs; and (4) if the claimant could not withstand such a training period, whether there would be other jobs in the national economy that the claimant could perform.

Indeed, courts in this district evaluating similar vocational expert testimony have found that there remain unresolved facts warranting remand for further proceedings rather than an award of benefits. In *Bassett v. Commissioner of Social Security*, the court rejected the claimant's request for an award of benefits because it wasn't clear from the transcript whether the vocational expert's testimony regarding more-than-occasional-contact during a

---

[5]    Even though Maack's attorney initially asked the vocational expert about a "training and probation" period, Tr. 64, in her brief Maack focuses only on her ability to complete a training period, Doc. 8, at 5–8.

30-to-60-day probationary period referenced jobs in general or the three jobs the expert identified. No. 5:24-cv-1600, 2025 WL 798791, at *6 (N.D. Ohio Mar. 13, 2025), *report and recommendation adopted*, 2025 WL 1068013 (N.D. Ohio Apr. 9, 2025). And the claimant's attorney hadn't asked if an individual who was limited to occasional interaction with others could nevertheless "'weather the probationary period,' or language to that effect, of the three identified jobs." *Id*. In *Loy v. Commissioner of Social Security*, the court rejected the claimant's request for an award of benefits because the vocational expert "did not testify that all SVP 2 level jobs require a 30-day training period during which the individual would be exposed to greater than occasional contact with their supervisor" and didn't testify that an individual couldn't "work[] in an SVP 2 position with a shorter training period." No. 5:24-cv-02239, 2025 WL 2611407, at *8 (N.D. Ohio Sept. 10, 2025), *report and recommendation adopted*, 2025 WL 3229608 (N.D. Ohio Nov. 18, 2025). In *Follen v. Commissioner of Social Security*, the court rejected the claimant's request for an award of benefits because the vocational expert testified generally about the "typical" training period for "unskilled occupations" but not the three identified jobs, and, "most critically, [whether] a person limited to occasional interactions with others could make it through those training periods." No. 5:24-cv-1719, 2026 WL 1382438, at *6 (N.D. Ohio May 18, 2026). And in *Medhurst v. Commissioner of Social Security*, the court rejected the claimant's request for an award of benefits because the vocational expert testified generally about the "usual"

9

probationary period of unskilled work rather than the three identified jobs. No. 5:25-cv-1862, 2026 WL 1758257, at *5 (N.D. Ohio June 18, 2026).

In support of her position that there are no unresolved facts, Maack relies on three cases from the Southern District of Ohio. Doc. 8, at 6–7, 9 (citing *McLaughlin v. Comm'r of Soc. Sec.*, No. 3:17-cv-424, 2019 WL 125761 (S.D. Ohio Jan. 8, 2019), *report and recommendation adopted*, 2019 WL 1902749 (S.D. Ohio Apr. 29, 2019); *McAfee v. Comm'r of Soc. Sec.*, No. 3:19-cv-125, 2020 WL 5810004 (S.D. Ohio Sept. 30, 2020), and *Matthew H. v. Comm'r of Soc. Sec.*, No. 3:20-cv-241, 2022 WL 2255376 (S.D. Ohio June 23, 2022)). These cases are distinguishable. In *McLaughlin* and *McAfee*, the vocational expert testified that the claimant could not complete the probationary period of the three identified jobs. The court also commented that the cases were "unusual" because one was more than seven years old and the other was more than ten years old, and both came on the heels of "three unsound ALJ decisions." *McLaughlin*, 2019 WL 125761, at *3–4; *McAfee*, 2020 WL 5810004, at *4–5. In *Matthew H.*, the Commissioner had not responded to the plaintiff's request for an award of benefits, so the court found that "all essential factual issues have been resolved and the record adequately establishes Plaintiff's entitlement to benefits." 2022 WL 2255376, at *5.

The vocational expert testimony in Maack's case more closely resembles the testimony in the cases in this district, detailed above, rather than the testimony in *McLaughlin* and *McAfee*. Also, this case is not "unusual" in that

10

there have not been multiple remands to the Agency that have delayed matters for years, as in *McLaughlin* and *McAfee*. And the government contests Maack's request for an award of benefits, unlike in *Matthew H*. Given all of the above, I recommend that the Court remand this case to the Commissioner for factual development of vocational issues, rather than order an award of disability benefits.

Finally, in her reply brief Maack argues that remanding this case to the Commissioner for factual development "'would create an unfair "heads we win; tails, let's play again" system of disability benefits adjudication.'" Doc. 10, at 3 (quoting *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004)). Maack claims that in *Bassett*, a case from this district discussed above, the ALJ on remand "altered limitations to try and change the end result at step four (4) instead of step five (5)." Doc. 10, at 3. Maack, however, doesn't cite evidence to support her assertion. Even if what she says is accurate, she hasn't shown how a different ALJ's decision in a different case would cause the ALJ in this case to do the same thing. Maack's unfounded suspicion about what the ALJ in her case will do after remand is not a reason to award benefits.

**Conclusion**

For the reasons explained above, I recommend that the Court reverse the decision of the Commissioner and remand this case with instructions to the

11

Agency to consider the unresolved vocational issues regarding the training period.

Dated: June 24, 2026

/s/ James E. Grimes Jr.
James E. Grimes Jr.
U.S. Magistrate Judge

### OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Court within 14 days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F.3d 520, 530–31 (6th Cir. 2019).